## No. 13,174.

### State ex rel. W. H. Cayard, Antonio Raggio and Charles Raggio, Praying for Writ of Habeas Corpus.

#### Syllabus.

The merits of criminal cases in which defendants have been convicted cannot be considered on an application for a writ of *habeas corpus*.

Where defendants in a criminal prosecution raise in their defense questions of title to immovable property, the trial court may decide those questions, but such decision would be final only for the purposes of the prosecution and would not be *res judicata* in any civil cause between different claimants.

*John L. Kennedy* for Relators.

Respondent Judge *pro se.*

*M. J. Cunningham,* Attorney General, and *Minos T. Gordy,* District Attorney, for the State of Louisiana in Opposition.

The opinion of the court was delivered by

NICHOLLS, C. J. Relators pray this court to order their release and discharge from the custody of the sheriff of the parish of Vermillion and invoke at our hands the granting of a writ of *habeas corpus* and all orders necessary in the premises, and general relief.

This prayer is based upon allegations that they had each of them entered on the 1st of March, 1898, under the provisions of the Act of Congress, approved May 20th, 1882, commonly known as the "Homestead Act," certain tracts of land, which they described. That the land embraced in their respective homestead entries was shown by the record of the Land Department of the United States, at the time said entries were made, to be a part of the public lands of the United States, hitherto undisposed of by the Government. That after initiating their said homestead entries they established residence on the land covered by their respective claims, within six months from the date of same, as required by the terms of the "Homestead Act." That said Cayard's house was built and his family and himself established residence therein during the month of June, 1898. That Antonio Raggio built his house and established residence therein together with his family, during the month of April, 1898; that Charles Raggio built his house and established his residence on his claim during the month of December, 1898. That after establishing their residences on their respective homestead claims as required by the Act of Congress under which their entries were made, they continued to reside thereon together with their families without molestation up to April, 1899, when they were arrested under an indictment by the State grand jury in and for Vermillion parish, charging them with trespass committed upon the lands covered by their United States homestead entries.

That they were arraigned and tried under the aforesaid charge before the Honorable Conrad DeBaillon, judge of the Seventeenth Judicial District Court for the parish of Vermillion, and convicted of the same, and were sentenced on the 17th day of April, 1899, to pay a fine of fifty dollars ($50.00) each, or in default thereof, to serve six months in the Parish Prison. That being unable to pay the fine imposed, they were arrested by J. O. Hebert, sheriff of the parish of Vermillion, and incarcerated in the Parish Prison, and are now in the actual custody of said sheriff. That such imprisonment is illegal and unjust, being based on a judgment rendered by a court absolutely without jurisdiction over the subject matter and they are deprived of their liberty in contravention of the Constitution and Statutes of the United States. That no appeal lies from the verdict of the said court, by reason of the fine imposed, and they are forced to seek relief at the hands of this court.

The District Court was ordered to send up the records in the causes referred to in order that their validity might be ascertained and show cause why the relief prayed for should not be granted, and the sheriff to show by what cause he held the said parties and to receive what the court should consider concerning them.

The sheriff returned that he held said parties under sentences imposed upon them by the Seventeenth Judicial District Court for the parish of Vermillion for having trespassed upon the lands of the individuals named in the indictments which he annexed, which indictments were preferred under Act 85 of 1890.

The District Judge made a return in which he denied that relators had been indicted, tried, convicted and sentenced for trespass upon lands belonging to the United States.

He averred that Charles Raggio, one of the relators, was indicted, arraigned, tried, convicted and sentenced for trespass (if it could be so called), under Act 85 of 1890, on private lands of Oneziphore Thibodeaux; that on the trial of said Raggio, it was fully and conclusively shown that Thibodaux was the true and lawful owner of said land by authentic act translative of property which was duly recorded; that he acquired said property from the State of Louisiana; that the State of Louisiana acquired the land under the swamp land grant of 1849, from the United States; that said land was selected by the State of Louisiana in 1852, approved by the Commissioner of the General Land Office and confirmed April, 1857, by Congress to the State of Louisi-

ana.  He made similar returns as to Antonio Raggio and William H. Cayard, differing only as to the description and ownership of the properties upon which the said other parties were charged with having committed trespass.

He further returned that the parties so holding the lands under the State and their authors had been in the actual public and private possession of their respective properties since the segregation of the same from the United States by the selection of the State and the transfer to them by the State and up to their forcible entry by the relators.

That all the proceedings leading to the convictions and sentences of the relators were regular and in strict accordance with law.  That relators were attempting to have sentences, regular in all respects, overruled by proceedings by *habeas corpus*, on an assumed state of facts unsupported by any evidence on their trial.  That they seek by *habeas corpus* to have the lands upon which they have been convicted of having trespassed, declared to belong to the United States, upon no evidence except certificate of entry under the homestead laws, notwithstanding the decision of this court in 32 Ann., 882, Thibodaux vs. Broussard, involving the same issues, and judgment against their pretensions by the Seventeenth Judicial District Court for Vermillion parish, affirmed by the Court of Appeals, Third Circuit.

That the relators were duly indicted by the grand jury of the parish of Vermillion, upon said indictments they were regularly arraigned and pleaded not guilty; their cases were regularly fixed for trial and on the day so fixed they were regularly tried and they were found guilty as charged: That relators were assisted by counsel from the inception of the prosecutions to their end.

That said counsel were informed by the court in open session, in answer to a question raised by said counsel as to whether or not said cases were appealable, that the cases could be appealed, and cautioned to reserve and tender all bills of exception to the rulings of the court in the event of an adverse verdict; this their counsel failed to do.

That after relators had been convicted the court informed the counsel that they would be permitted to file bills of exception and the court would sign them, if they desired to appeal the cases.  That on the day the sentence was pronounced the court again informed counsel that the court was not disposed to fine the relators more than the minimum fixed by law, unless they desired to appeal the cases; that the counsel informed the court that they had nothing to say further.

Further answering he returned that he was reliably informed and verily believed, and therefore returns, that counsel for relators wanted no appeal, but desired that the relators be jailed in order to enable them to apply for writs of *habeas corpus* before the Federal Courts, and, failing them, before this court.

Further answering he averred that under Act of Congress of date March —, 1849, the State of Louisiana selected the whole of township Fourteen, South of Range Four East, T. 14, R. 4 E., which selection was approved by the Commissioner of the General Land Office and confirmed by Congress in April, 1857, and was so decided by this Honorable Court in 32 Ann., 882, Thibodeaux vs. Broussard.

## OPINION.

Relators seek to bring before us on this application, the merits of the criminal cases in which they were tried and convicted. This cannot be done. They do not attack the regularity of the proceedings in the District Court, but they do dispute the power and authority of that court to have permitted the cases to be taken up and disposed of under the issues raised.

In the brief in their behalf it is said: "We submit that relators have not been guilty of the violation of any statute of the State of Louisiana and that the judge of the Seventeenth Judicial District Court assumed an unwarranted jurisdiction in trying and convicting relators of criminal trespass on lands, the possession of which they had peaceably taken under the full warrant and relying upon the good faith of the United States Government."

We understand their claim to be "that they respectively took possession of the properties, upon which they are charged to have committed trespass, under homestead entries authorized to be made by the local officers of the Land Department of the United States of lands appearing at the time the entries were made to be a part of the public lands of the United States then undisposed of. That such possession was taken in good faith and as they assert, not only under color of title but under an actual title or right of possession. That cases which exhibit conflicting claims to lands under color of title are not cases calling for prosecution under a criminal statute for trespass. That the State courts are without jurisdiction to pass upon and decide questions of title where an issue is raised that the land charged

to have been trespassed upon still remains the property of. the United States. That that question has to be decided either by the Land Department or the courts of the United States. That the State courts have no jurisdiction over cases of trespass on the public lands of the United States." The conviction of thè defendants by a jury for criminal trespass, followed by the judgment of the District Court based thereon, carry with them in this collateral proceeding, independently of any subsequent statement of facts by the judge, a legal presumption that all the facts necessary to have been shown on the trial of the criminal cases, against relators to authorize their conviction for that offense, were in fact shown.

The right of the Seventeenth Judicial District Court to have taken cognizance of the cause is beyond dispute. By Act No. 85 of 1890, it was enacted by the General Asesmbly of Louisiana that "whoever shall take possession of any tract of land or any part thereof, or of any house or other tenement being the property of another, without any legal right so to do, and whose possession shall not have continued for one year without disturbance, * * * shall on conviction, be fined not less than fifty dollars, nor more than one thousand dollars, or imprisoned not less than ten days, nor more than six months, or both at the discretion of the court."

The grand jury of the parish of Vermillion returned indictments against these relators charging them with having violated the provisions of that statute.

The defendants pleaded "not guilty" and the case went to trial.

After verdict the defendants in different manners excepted to the jurisdiction of the court on the ground stated, that the land in question had never been severed from the public domain of the United States; that the State court had no authority to try a person for trespass upon public lands of the United States.

The indictments did not charge the defendants with trespass upon the lands of the United States. Charles Raggio was charged wtih trespass upon the lands of Oneziphore Thibodaux—Antonio Raggio with trespass upon the lands of Desire Thibodaux, and Cayard with trespass upon the lands of Emile Thibodaux.

The cases having been placed at issue, were, necessarily, sent to trial for the purpose of ascertaining what the facts of the case were and fixing either the guilt or innocence of the accused. The mere fact that it was disclosed upon the trial that the defendants held homestead

entry certificates from the local officers of the Land Office authorizing them to enter upon these particular lands, and that they had done so, under the authority of these certificates, and that there were conflicting claims advanced as to the ownership of the property, did not have the effect of ousting the jurisdiction of the District Court from the trial of a criminal prosecution based upon the violation of a statute of the State.

It would, by no manner of means, follow, that defendants could not be legally charged and legally convicted of trespass upon lands situated in Vermillion parish, because they held homestead-entry certificates for those lands from officers of the United States Government.

The situation of the land at the time of the entry may have been such with respect to their being then in the possession of third parties claiming anterior rights of ownership and possession before, as not to justify them in taking the law into their own hands and moving at once upon the property, to the prejudice of the rights of those parties, and in utterly ignoring their claims and pretensions.

The verdict of the jury adverse to the defendants, and the judgment of the court sustaining the same, did not settle or pretend to settle the question of title between these defendants and the parties in actual possession of the land. That matter is as open to-day as it was before the trials were had. The question of title came up only collaterally and incidentally in those cases for the sole object of determining for the purpose of those particular cases the question of trespass. The judgments in the cases would not be *res judicata* in any civil suit between the different claimants to the land, so as to determine the ownership of the same. The parties to the litigation would not be the same, nor would the cause of action be the same.

Defendants having in their defense in a criminal suit raised, collaterally, questions concerning the title and possession of the property, the jury and the court *ex necessitate* were bound to consider them, for they lay right across the path to a decision. They could not avoid them. They were bound to be disposed of, to reach a decision, one way or the other. The decision, however, when reached, was only a decision reached incidentally and collaterally—final it is true for the purpose of that particular suit, and the ultimate issue in that suit—but binding and effective no further than that—except possibly as *rem ipsam* in some other proceeding to show knowledge or motive or good faith, but not to settle and dispose of the question of ownership.

We find nothing in this record which would justify action on our part under a writ of *certiorari*. The case is not one under which we would have been authorized upon a writ of *habeas corpus* as a separate, distinct and independent writ to have discharged relators, even if the facts were other than they are. Constitution of 1898, Article 93.

For the reasons assigned, relators' application to this court for relief in the premises must be denied. The writs and orders heretofore given herein are set aside.

Rehearing refused, November 20th, 1899.

BREAUX, J., recused himself in matter of the title to the land in question.